IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 07-20569 CIV - GOLD

KATHERINE MURPHY,

        Plaintiff,

v.

CITY OF AVENTURA, a Municipality Governed
Under the Laws of the State of Florida,
CHARTER SCHOOLS USA at AVENTURA, LLC,
A Florida limited liability Company,
ERIC SOROKA, in his Official and an individual
Capacities
NICOLE MONROE, an individual,

        Defendants.

_____/



## SECOND AMENDED COMPLAINT FOR DAMAGES

The Plaintiff, KATHERINE MURPHY, (hereinafter, "DR. MURPHY" or "PLAINTIFF"), hereby files her SECOND AMENDED COMPLAINT against the Defendants, CITY OF AVENTURA, CHARTER SCHOOLS USA at AVENTURA, LLC, ERIC SOROKA, in his Official and Individual Capacities, and NICOLE MONROE (hereinafter collectively referred to as "DEFENDANTS") for a sum in excess of $15,000, and in equity, and states:

## PARTIES AND JURISDICTION

1.     At all material times herein, Plaintiff, KATHERINE MURPHY, is a resident of Palm Beach County, Florida, and is otherwise sui juris. The PLAINTIFF was hired by the City of Aventura to serve as Principal of the AVENTURA CITY OF EXCELLENCE SCHOOL (hereinafter "ACES"). The Plaintiff was an employee of the CITY OF AVENTURA.

2.     At all times material herein, Defendant, the CITY OF AVENTURA, is a municipality organized under the laws of the State of Florida.

3.      At all times material herein, Defendant, CHARTER SCHOOLS USA at AVENTURA, LLC (hereinafter "CSUSA"), is a limited liability company organized under the laws of the State of Florida.  Defendant CSUSA has principal offices located in Broward County, Florida.

4.      At all times material herein, Defendant, ERIC SOROKA (hereinafter "SOROKA"), is a resident of Miami Dade, County, Florida, and is otherwise sui juris. Defendant SOROKA is the City Manager of the CITY OF AVENTURA.

5.      At all times material herein, Defendant, NICOLE MUNROE (hereinafter "MONROE"), on information and belief, is a resident of Miami Dade, County, Florida, and is otherwise sui juris.  Defendant MONROE is an employee of CHARTER SCHOOLS USA and is the data processor for the ACES.

## FACTUAL ALLEGATIONS UPON WHICH ALL COUNTS ARE BASED

6.      Plaintiff, KATHERINE MURPHY, was employed by Defendant CSUSA as a principal as well as a member of senior management and worked with the various schools it operated.  DR. MURPHY was making a salary of one hundred twenty five thousand dollars ($125,000) with CSUSA.

7.      In or around January 2003, Defendant CSUSA entered into an agreement with Defendant CITY OF AVENTURA to operate a charter school, named the AVENTURA CITY OF EXCELLENCE SCHOOL ("ACES").  At that time, ACES was a new school in the CITY OF AVENTURA.  ACES is a charter public school that is regulated by the laws of the State of Florida.

8.      With that, ACES needed to hire a Principal for the school.  The Principal position at ACES paid a salary of eighty-nine thousand five hundred dollars ($89,500) a year.  In or

around March 2003, Defendant CSUSA pleaded with DR. MURPHY to accept the position as Principal of ACES. The management agreement between Defendant CITY OF AVENTURA and Defendant CSUSA provided that if Defendant CITY OF AVENTURA was not able to pay DR. MURPHY the salary necessary to take the position, CSUSA would agree to pay DR. MURPHY out of the compensation received from its management fee.

9.      CSUSA informed DR. MURPHY that she would receive monetary compensation from CSUSA in addition to receiving a salary from Defendant CITY OF AVENTURA.[1] CSUSA agreed to pay DR. MURPHY forty thousand dollars ($40,000) a year out of its management fee as compensation for accepting a position that paid less than she currently was earning with CSUSA.

10.     On or about April 1, 2003, Dr. KATHERINE MURPHY entered into a contract with the CITY OF AVENTURA to serve as Principal of ACES. DR. MURPHY was to be paid a salary of eighty nine thousand five hundred dollars ($89,500) a year from the CITY OF AVENTURA; Defendant CSUSA agreed to pay DR. MURPHY an additional forty thousand dollars ($40,000) a year to DR. MURPHY for accepting the ACES Principal position.

11.     ACES is operated by CSUSA; however, the schools budget is approved by the Aventura City Commission. The City Commission functions as the schools governing board; however, Defendant SOROKA, the Aventura City Manager, required his name to be listed as the chair of the school's governing board on all papers filed with the Miami Dade School District.

12.     DR. MURPHY was a CITY OF AVENTURA employee who reported to the Aventura City Manager, Defendant ERIC SOROKA.

---

[1] A copy of the contract with CSUSA was in DR. MURPHY'S office at the time she was terminated from her employment as Principal. After DR. MURPHY'S termination, Defendants SOROKA and CITY OF AVENTURA have not permitted DR. MURPHY to enter the school to clear out her office and take possession of her personal items. As of this date, DR. MURPHY'S personal items have not been returned to her.

13.     ACES originally enrolled children based upon a lottery system. After the original enrollment period, priority was to be given to children based upon a waiting list. The first child on the waiting list would have a preference to attend the school. ACES'S charter provides for a maximum enrollment of eight hundred (800) students for current year 2006-07.

14.     During the time that DR. MURPHY was employed as Principal of ACES, the school was rated one of the highest performing schools in the State of Florida, and DR. MURPHY received outstanding performance reviews.

15.     For the school year 2004-2005, DR. MURPHY received an outstanding performance appraisal from Defendant SOROKA.

16.     For the school year 2005-2006, DR. MURPHY received an outstanding performance appraisal from Defendant SOROKA. Dr. Murphy's evaluation ratings enabled her to receive merit pay increases from the City for the 2005-2006 school year.

17.     On or about October 1 2006, Defendant SOROKA sent DR. MURPHY a letter informing her that she was given a 4% raise in her salary. In addition, Defendant SOROKA stated to DR. MURPHY, "As we begin our new fiscal year, I look forward to another successful year for the City of Aventura and appreciate your efforts over the past year." (A copy of the letter is attached hereto as Exhibit "1").[2]

18.     On or about December 1, 2006, only two months after Defendant SOROKA sent DR. MURPHY a complimentary letter, Defendant SOROKA contacted DR. MURPHY on the telephone. In that conversation, Defendant SOROKA informed DR. MURPHY that he was terminating her from her position as principal of the ACES. Defendant SOROKA stated that DR. MURPHY could either voluntarily resign from her position as Principal or in the alternative,

---

[2] All Exhibits referenced in the Second Amended Complaint are attached to the First Amended Complaint, and therefore, are not attached hereto.

informed her of his decision.

19.     Subsequently, DR. MURPHY asked Defendant SOROKA the reasons he was terminating her from the position. Defendant SOROKA informed DR. MURPHY that "it was in his purview." Defendant SOROKA further informed DR. MURPHY that he does not have to provide any information to her; however, Defendant SOROKA did advise DR. MURPHY that he was fed up with her focus on this "Living Values Crap."[2]  He also stated that his staff said that the Charter School needs to focus more on preparation for the FCAT.[3]

20.     In that same conversation, Defendant SOROKA *falsely accused* DR. MURPHY of receiving illegal kickbacks. Defendant SOROKA ***falsely accused*** DR. MURPHY of receiving money from Mr. and Mrs. Norman (so that Jake Norman, the Norman's child, could be accepted to ACES) and thereafter, depositing the funds into Sunshine Funds for her trip to Switzerland. Dr. MURPHY collected private donations for her summer trip to Geneva, Switzerland to represent the United States at an international conference focusing on values education. Only after DR. MURPHY had several donations made out to The Sunshine Fund did Defendant SOROKA request DR. MURPHY have checks made payable to The City of Aventura. All monies were properly accounted for, however.

21.     Defendant SOROKA also ***falsely accused*** DR. MURPHY of offering Jake Norman entrance in ACES even though he was not on the top of the waiting list.

22.     Defendant SOROKA informed DR. MURPHY that she had until 3 p.m. that day

---

[2] Living Values is a character education program taught to students at ACES and implemented by DR. MURPHY.

[3] The Florida Comprehensive Assessment Test (FCAT) is part of Florida's overall plan to increase student achievement by implementing higher standards. The FCAT, administered to students in Grades 3-11, contains two basic components: criterion-referenced tests (CRT), measuring selected benchmarks in Mathematics, Reading, Science, and Writing from the Sunshine State Standards (SSS); and norm-referenced tests (NRT) in Reading and Mathematics, measuring individual student performance against national norms. The FCAT was implemented in conjunction with the "No Child Left Behind Law," a federal law.

(December 1, 2006) to voluntarily resign, or she would be formally terminated. Defendant SOROKA informed DR. MURPHY that he needed to know her decision immediately. DR. MURPHY, however, informed Defendant SOROKA that his accusations were false and that she needed to contact the Aventura City Commissioners to discuss it with them.

23.     Later that day, Defendant SOROKA sent a city employee to Ocean Ridge, Florida to deliver a memorandum to DR. MURPHY advising her that "unless you execute and return to me the enclosed Separation Agreement by 3:00 p.m. this afternoon, it is my intention to execute the enclosed memo formally terminating your employment with the City of Aventura. (A copy of the memorandum is attached hereto as Exhibit "2").

24.     DR. MURPHY did not sign the Separation Agreement, thereby resulting in a formal termination of her employment by the CITY OF AVENTURA. In the early evening, an Aventura Policeman delivered DR. MURPHY the termination papers.

25.     Upon information and belief, also on December 1, 2006, during a telephone call with a parent of ACES, Defendant SOROKA informed the parent that there had not been any emergency necessitating immediate action, such as the harming of a child, staff or to property; "But that is was in his purview to do so." Defendant SOROKA also falsely claimed that DR. MURPHY had prior knowledge of her termination.

26.     DR. MURPHY, however, was not provided any notice of her termination and an opportunity to be heard at a dismissal hearing. Defendant SOROKA wrongfully terminated DR. MURPHY from her position as principal of ACES.

27.     DR. MURPHY was not permitted to clean out her office and desk; DR. MURPHY left many valuable personal items that have not been returned to her. DR. MURPHY has been denied access to ACES and her office in order to retrieve her personal items. Upon

information and belief, ACES or Defendant SOROKA presently has possession of DR. MURPHY'S personal items.[4]

## DEFAMATION-SLANDER PER SE

28.     Upon information and belief, prior to Defendant SOROKA terminating DR. MURPHY from her position as principal of ACES, in an effort to gain support for his termination of DR. MURPHY, Defendant SOROKA had a conversation with each of the Aventura City Commissioners concerning DR. MURPHY.  In the conversations, Defendant SOROKA made false and libelous statements about DR. MURPHY to the Commissioners.

29.     Upon information and belief, Defendant SOROKA wrongfully, purposefully, intentionally, and knowingly made a false statement to the Aventura City Commissioners that DR. MURPHY offered Jake Norman, an Aventura child, entrance into ACES even though he was not first on the wait list.

30.     In addition, upon information and belief, Defendant SOROKA also wrongfully, purposefully, intentionally, and knowingly made a false statement to the City Commissioners that DR. MURPHY offered Jake Norman entrance into the school after DR. MURPHY received illegal monetary kickbacks from his parents.

31.     Moreover, upon information and belief, Defendant SOROKA wrongfully, purposefully, intentionally, and knowingly made a false statement to the City Commissioners that

---

[4] Such items include, but are not limited to: (a) personal CD'S; (b) DR. MURPHY'S personal stationary and paper items; (c) contracts, including her contract with the City of Aventura; (d) personal papers; (e) professional development documentation; (f) letters of recommendation; (g) evaluations both from ACES and previous employees; (h) middle school research; (i) character education binder; (j) binders from various conferences concerning ideas for future development; (k) professional magazines and journals from places of employment prior to ACES; (l) a matching suede file box; (m) living values box that held chocolate for teachers and staff; (n) BOSE radio/CD Player; (o) 10 glass vases; (p) oriental carpet; (q) 3 pieces of art; (r) a scanner; (s) a large monitor; (t) 4-5 boxes of Beanie Babies and assorted stuffed toys; (u) priceless editions of DR. MURPHY'S father's aunt, and grandmother's books passed down to her father; (v) a Japanese "chop", where DR. MURPHY'S father's signature is etched on a piece of glass that is used as a "stamp" of his signature.

DR. MURPHY misappropriated school funds. Defendant SOROKA stated to the Commissioners that DR. MURPHY opened an unauthorized account, known as "the SUNSHINE FUND". The SUNSHINE Committee was established in order to promote extra curricular and/or social activities for the staff. In November of 2004, The Aventura City Finance Director, Harry Kilgore, helped establish the fund account for the SUNSHINE Committee. ACES SUNSHINE FUND is a discretionary fund similar to those that public schools have in order to fund such things not established (or not adequately funded) in the school. ACES SUNSHINE FUND is used to fund such things not established in the school budget, such as staff parties, flowers, gifts, and professional development. It is essentially the Principal's Discretionary Fund.

32.    Upon information and belief, on or about December 3, 2006, just two days after DR. MURPHY was terminated, Defendant SOROKA was asked by several people the reasons DR. MURPHY was fired, including ACES' School Advisory Board members. Defendant SOROKA wrongfully, purposefully, intentionally, and knowingly informed the individuals that "we have very compelling evidence why we let her go."

33.    Upon information and belief, on or about January 8, 2007, at School Board Advisory Meeting, a few of the parents asked Defendant SOROKA why DR. MURPHY was terminated. Defendant SOROKA wrongfully, purposefully, intentionally, and knowingly informed the parents that "it is very serious stuff; however, we can not talk about it."

34.    Upon information and belief, on or about January 9, 2007, at the Aventura City Commission meeting, the parents that attended the meeting were told by the City attorney that they "should be careful what they ask for. They might be sorry to see what will be revealed."

## JAKE NORMAN'S ADMITTANCE TO THE AVENTURA CHARTER SCHOOL OF EXCELLENCE ("ACES")

35.     On or about October 24, 2006, Defendant MONROE asked DR. MURPHY whether she could call the Norman's and offer their son, Jake, entrance to ACES.   Defendant MONROE informed DR. MURPHY that ACES would then be enrolled a maximum capacity of eight hundred (800) students.  DR. MURPHY replied, "Certainly."[5]   DR. MURPHY assumed Jake was at the top of the waitlist since Defendant MONROE asked to admit him; DR. MURPHY was not aware that Jake Norman was not on the top of the wait list for ACES.

36.     Shortly thereafter, Defendant MONROE contacted the Norman's and informed them that their son Jake was admitted to ACES.

37.     On or about November 17, 2006, DR. MURPHY was informed by Defendant MONROE that Defendant SOROKA had just called her to inquire about Jake Norman, a child who allegedly was offered entrance into ACES despite not being first on the wait list.  DR. MURPHY was on her way to meet with Defendant SOROKA and mentioned the phone call.  Defendant SOROKA stated to DR. MURPHY, "I was at a cocktail party last night and it was mentioned to me that this boy was leap-frogged up the waitlist."   Defendant SOROKA then requested DR. MURPHY to look into the situation.

38.     On or about November 20, 2006, DR. MURPHY asked Defendant MONROE about Jake Norman and whether he was offered entrance into the school without being on the top of the wait list.  Defendant MONROE replied, that she did not know where Jake Norman was on the waitlist.  Defendant MONROE also informed DR. MURPHY that "the lottery is a moving target; once a child is moved from the applicant file to the enrolled file, there is no record where the child was on the wait list."

---

[5] It was DR. MURPHY's belief that since Defendant MONROE was the data processor of ACES, she had first hand knowledge that Jake Norman was at the top of the wait list.

39.     On that same date, Defendant SOROKA contacted DR. MURPHY and requested an update concerning Jake Norman's admittance into the school. Defendant SOROKA threatened some type of disciplinary action against Defendant MONROE if she had acted improperly.

40.     On or about November 22, 2006, Defendant MONROE confessed to DR. MURPHY that she did not believe Jake Norman had participated in the lottery. Defendant MONROE also stated that she believes that Jake Norman may have been at the end on the wait list.

41.     Subsequently, upon information and belief, in the afternoon on November 22, 2006, Defendant SOROKA called Defendant MONROE and attempted to coerce a confession that Defendant MONROE was responsible for admitting Jake Norman to the school in violation of the school's charter. Defendant SOROKA stated to Defendant MONROE, "You had better tell me the truth Nicole. It will come out. Do not worry. You will not get fired if you can tell me that DR. MURPHY knew where the Norman child was on the waitlist. Is DR. MURPHY trying to coerce you into lying?" Defendant MONROE informed Defendant SOROKA that DR. MURPHY did not know where the Norman child was on the waitlist. Defendant SOROKA requested that DEFENDANT MONROE keep his phone call confidential.

42.     On or about November 23, 2006, Defendant SOROKA contacted DR. MURPHY and requested an update concerning Jake Norman's admittance into the school. Defendant SOROKA threatened some type of disciplinary action against Defendant MONROE if she had acted improperly.

43.     On or about November 28, 2006, Defendant SOROKA had a conversation with DR. MURPHY concerning the entrance of the Norman child into ACES. In that conversation, Defendant SOROKA informed DR. MURPHY that Defendant MONROE informed him that DR. MURPHY did in fact know where the Norman child was on the waitlist, and despite where Jake

Norman was on the list, DR. MURPHY offered the child entrance into the child. DR. MURPHY replied, that Defendant MONROE'S alleged statement was not true. DR. MURPHY then called Defendant MONROE. In that conversation, Defendant MONROE informed DR. MURPHY that Defendant SOROKA was lying and reiterated that she knew DR. MURPHY did not have knowledge of the issue.

44.     Upon information and belief, Defendant MONROE wrongfully, purposefully, intentionally, and knowingly informed Defendant SOROKA that DR. MURPHY in fact offered Jake Norman entrance into ACES even though he was not on the top of the wait list.

<u>**DR. MURPHY'S OUTSTANDING ACHIEVEMENTS AND HONORS**</u>

45.     Dr. MURPHY has received National Honors for her contributions and service to the field of Education. DR. MURPHY has received honors on behalf of ACES and herself such as:  (a) In or around July 2006, DR. MURPHY was invited to go to Switzerland to join the **International Living Values Organizations** to be considered for appointment to their Advisory Board; (b) In or around October 2006, DR. MURPHY attended the nations' leading character education conference in Virginia to accept an award for ACES' Human Rights Curriculum; (c) In or around November 2006, DR. MURPHY had been selected as one of thirty five individuals to present a paper and participate in an international discussion about charter schools at Oxford University to be held March, 2007.

46.     DR. MURPHY has also helped ACES raise thousands of dollars for the American Cancer Society, Hurricane relief aid, homeless shelter victims, the Humane Society, the ACES media center fund as well as Cystic Fibrosis. DR. MURPHY was in fact invited to walk for Cystic Fibrosis in the spring of 2006.

47.     DR. MURPHY was an exemplary employee and Principal of ACES. Under her

leadership and direction, DR. MURPHY has guided ACES to become one of the best schools in the State of Florida.   In 2006, ACES was honored as an "A+" School in the State of Florida.[6]  In addition, ACES has been honored by Jeb Bush, the Governor of the State of Florida, the Mayor of Miami, and several professional organizations for achieving the rating of sixth highest performing K-8 school in the State of Florida.

**COUNT I**
**VIOLATION OF 42 U.S.C. SECTION 1983 - PROCEDURAL DUE PROCESS**
**Against Defendant SOROKA in his Official Capacity as City Manager of Aventura and**
**Defendant CITY OF AVENTURA**

48.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 47 as though fully set forth herein.

49.     Defendant CITY OF AVENTURA, as a local governmental body and municipality, is subject to suit under Section 1983.   42 U.S.C.A. § 1983; See also _Johnson Services, Inc. v. Pinellas County,_ 863 So. 2d. 470, 472 (Fla.App. 2nd Dist 2004).

50.     Defendant SOROKA, as the City Manager of Aventura, was personally involved in making the decision to terminate DR. MURPHY from her position as Principal of ACES; it is the CITY OF AVENTURA'S official policy or custom that the City Manager of Aventura makes the decision to terminate an Aventura City employee from his/her employment.

51.     On or about December 1, 2006, without any notice whatsoever, and without an opportunity to be heard, Defendant SEROKA, the Aventura City Manager, informed DR. MURPHY that she was being terminated from her position immediately.

52.     Later that day, Defendant SOROKA sent DR. MURPHY a memorandum informing her that her employment would be terminated unless she executed the Separation Agreement. (See Exhibit "2").  The memorandum/notice failed to inform DR. MURPHY of any

---

[6] An "A+" rating is the highest possible rating in the State of Florida.

administrative hearing or judicial review that was available to her under section Fla. Stat. § 120.57.[7]

53.    The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving "any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, s.1.

54.    Defendant SOROKA'S public statements to the Aventura City Commissioners, ACES' School Advisory Board members, and ACES parents, were false, of a stigmatizing nature, and were in conjunction with her discharge from municipal employment.   DR. MURPHY'S reputation, good name, honor, and integrity was attacked by Defendant SOROKA.

55.    DR. MURPHY suffered injury to her reputation as a result of the defamatory statements made public by Defendant SOROKA about DR. MURPHY, in conjunction with her termination as Principal of ACES and as an employee of the CITY OF AVENTURA.[8]   DR. MURPHY, as a City Employee and Principal of ACES, was entitled to an administrative hearing under the Florida Administrative Procedure Act.[9]

56.    DR. MURPHY'S termination caused injury to her reputation in conjunction with the termination of her state employment.[10]

---

[7] Fla.Stat. 120.569 provides, "The provisions of this section apply in all proceedings in which the substantial interests of a party are determined by an agency......Unless waived by all parties, 120.57 applies whenever the proceeding involves a disputed issue of material fact....***Each notice shall inform the recipient of any administrative hearing or judicial review that is available under this section 120.57*** or section 120.68; shall indicate the procedure which must be followed to obtain the hearing or judicial review; and shall state the time limits which apply.

[8] In Cornwell v. University of Fla., 307 So.2d 203, 210 (Fla. 1st DCA 1975) the Court held that "A professor is, and should be, entitled to a hearing if his reputation, good name, honor or integrity has been attacked by University officials in his non-renewal notice."

[9] A county school board and municipality is a state agency falling within Chapter 120 for purposes of quasi-judicial administrative orders. See Florida Statute § 120.52(12); Canney v. Board of Public Instruction of Alachua County, 222 So.2d 803, 804 (Fla. 1st DCA 1969).

[10] Where a state employee suffers injury to reputation in conjunction with the termination of state employment-even though lacking any entitlement to continued state employment, Sickon v. School Bd. of Alachua County, Fla, 719 So.2d 360, (Fla.App. 1 Dist.,1998), the courts have recognized a protected

57.     Pursuant to Fla.Stat § 120.57, Defendant SOROKA and Defendant CITY OF AVENTURA denied DR. MURPHY due process of law when she was not offered adequate notice of her termination and a meaningful opportunity to clear her name (known as a "name-clearing hearing") in violation of the Fourteenth Amendment.

WHEREFORE Plaintiff prays this Court to enter judgment against all the Defendants named in this Count, for compensatory damages, actual damages, consequential damages, attorney's fees and costs, and such other relief as this Court deems just and proper.

### COUNT II
### DEFAMATION-SLANDER PER SE
### Against Defendants SOROKA in his Individual and Official Capacity, CITY OF AVENTURA, and MONROE

58.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 47 as though fully set forth herein.

59.     The Defendants have engaged in slander per se.

60.     The Defendants' remarks were made concerning DR. MURPHY'S conduct with the proper exercise of her position as the Principal of ACES.

61.     The Defendants' remarks have spread throughout the Education Community and Aventura Community.  On information and belief, the remarks and comments were specifically made, but not limited to, the Aventura City Commissioners; the Mayor of Aventura; Potential Employers; DR. MURPHY'S former employer, CSUSA; various prominent education organizations; an international education consultant; and parents of ACES.

62.     The remarks of the Defendants were stigmatizing, malicious, false, and

---

liberty interest and the right to procedural **due process.** *Sickon v. School Board of Alachua County, Florida*, 719, So.2d 360, 366. *See also Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

slanderous and were made for the purpose of humiliating, defaming and injuring the Plaintiff.

63.    The statements by the Defendants were false when made; it was known to be false; and was disparaging to the property interests of the Plaintiff.

64.    The statements made by Defendants proximately damaged the Plaintiff and allow the imposition of Punitive Damages, in addition to all compensatory damages sustained by Plaintiff.

WHEREFORE Plaintiff prays this Court to enter judgment against all the Defendants named in this Count, for compensatory damages, actual damages, consequential damages, and costs, and such other relief as this Court deems just and proper.

## COUNT III
## BAD FAITH WRONGFUL TERMINATION
### Against Defendants SOROKA in his Official Capacity, CITY OF AVENTURA and CHARTER SCHOOLS USA

65.    Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 47 as though fully set forth herein.

66.    On December 1, 2006, Defendant SOROKA contacted DR. MURPHY on the telephone.  In that conversation, Defendant SOROKA informed DR. MURPHY that he was terminating her from her position as principal of ACES.  Defendant SOROKA stated that DR. MURPHY could either voluntarily resign from her position as principal or in the alternative, be terminated from her position.

67.    In bad faith and in violation of applicable law, Defendant SOROKA, as the Aventura City Manager, fired DR. MURPHY wrongfully and in bad faith.  Defendant SOROKA pre-textual reasons were as follows:

68.    Defendant SOROKA informed DR. MURPHY that he was terminating her employment for offering Jake Norman, an Aventura child, entrance into ACES even though he

was not first on the wait list. Defendant SOROKA'S allegation was unequivocally false.

69.    In addition, Defendant SOROKA also informed DR. MURPHY that she was being terminated for receiving illegal monetary kickbacks from the Norman's in consideration for offering Jake Norman entrance into ACES. Defendant SOROKA'S allegation was unequivocally false.

70.    Moreover, Defendant SOROKA told DR. MURPHY that she was being fired for misappropriating school funds. This allegation was also unequivocally false.

71.    Defendant SOROKA further told DR. MURPHY that she was being terminated because he was fed up with her focus on this "Living Values Crap." Living Values is a character education program taught to students at ACES and implemented by DR. MURPHY.

72.    DR. MURPHY has received numerous honors and awards as a result of her contributions to character education, and in fact attended the nations' leading character education conference in Virginia to accept an award for ACES' Human Rights Curriculum.

73.    DR. MURPHY was an outstanding employee, leader, and Principal at ACES that resulted in outstanding performance reviews, merit pay raises, as well as leading ACES to an "A+" rating.

74.    Under DR. MURPHY'S leadership and direction, ACES has become one of the best schools in the State of Florida. Under DR. MURPHY'S leadership, in 2005 and 2006, ACES was honored as an "A+" School in the State of Florida.   In addition, ACES has been honored by Jeb Bush, the Governor of the State of Florida, the Mayor of Miami, and several professional organizations for achieving the rating of sixth highest performing K-8 school in the State of Florida for the 2006 school year.

75.    DR. MURPHY had a property right in her employment as Principal of ACES and

an employee of the CITY OF AVENTURA.

76.   DR. MURPHY'S termination was wrongful and in bad faith.

WHEREFORE, Plaintiff, KATHERINE MURPHY, demands judgment in her favor against the Defendants named in this Count and seeks all further appropriate damages, attorney's fees, and costs to be awarded in her favor.

**COUNT IV**
**CONVERSION**
**Against Defendants SOROKA in his Individual and Official Capacity and CITY OF AVENTURA**

77.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

78.   Upon termination, Plaintiff demanded that Defendants return her personal property that included many sentimental items and professional materials; however, Defendants have not returned DR. MURPHY'S property.

79.   Defendants SOROKA and CITY OF AVENTURA intentionally, willfully, and knowingly wrongfully deprived Plaintiff of her property and have kept it for themselves.

80.   Defendants SOROKA and CITY OF AVENTURA have permanently deprived the Plaintiff her personal property by wrongfully retaining same.

WHEREFORE, KATHERINE MURPHY, prays this Court to enter judgment against the Defendants named in this Count for compensatory damages, actual damages, attorneys fees and costs, and such other relief as this Court deems just and proper.

**COUNT V**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**Against Defendant SOROKA in his individual capacity and Defendant MONROE and Defendant CSUSA**

81.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 47 as though

fully set forth herein.

82.     The Defendants intentionally and unlawfully interfered with the Plaintiff's contract with the CITY OF AVENTURA to serve as Principal of ACES.

83.     The Defendants were well aware that DR. MURPHY had a contract for employment with the CITY OF AVENTURA to serve as Principal of ACES.

84.     The Defendants' willful, intentional, unlawful, and improper interference caused the above referenced termination of DR. MURPHY'S employment with the CITY OF AVENTURA and CSUSA, thereby causing substantial damage to DR. MURPHY.

85.     Defendant MONROE intentionally and unlawfully interfered with DR. MURPHY'S contract in order to avoid her own termination for violating ACES Rules; Defendant SOROKA intentionally and unlawfully interfered with DR. MURPHY'S contract simply because he did not like her. The Defendants had no motive other than to cause damages to the Plaintiff.

86.     The Plaintiff suffered substantial damages as a result of the Defendants' unlawful interference with the Plaintiff's contractual relations.

WHEREFORE Plaintiffs pray this Court to enter judgment against the Defendants named in this Count for compensatory damages, actual damages, punitive damages, attorney's fees and costs, and such other relief as this Court deems just and proper.

## COUNT VI
## BREACH OF CONTRACT
### Against Defendant CSUSA

87.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 47 and as if fully set forth herein.

88.     Plaintiff and Defendant CSUSA were parties to a written contract providing for CSUSA to pay DR. MURPHY a salary in addition to the salary she was earning with ACES.

ACES was to pay DR. MURPHY eight-nine thousand five hundred dollars ($89,500) a year; CSUSA agreed to pay DR. MURPHY forty thousand dollars ($40,000) a year for the position. [11]

89.     Plaintiff performed her duties as a Principal from the period of April 2003 to December 2006.

90.     Defendant CSUSA failed to pay DR. MURPHY the salary they agreed to pay her for the periods April 2003-May 2003, and June 2005-Dececmber 2006.

91.     Defendant CSUSA breached the contract by failing to pay the Plaintiff her salary due.

WHEREFORE Plaintiff KATHERINE MURPHY prays this Court to enter judgment against Defendant CHARTER SCHOOL USA at AVENTURA, LLC for compensatory damages, actual damages, attorneys fees and costs, and such other relief as this Court deems just and proper.

## COUNT VII
## CONSPIRACY TO DEPRIVE DR. MURPHY A LIBERTY AND PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW
### Against Defendants SOROKA in his Individual and Official Capacity and CSUSA

92.     Plaintiff re-peats and realleges the allegations contained in paragraphs 1 through 47 and 48 through 58 as if fully set forth herein.

93.     Defendants SOROKA and an unidentified employee of Defendant CSUSA conspired to terminate DR. MURPHY's employment as a Principal of a Public School without providing her notice and an opportunity to be heard. The Defendants further conspired to deny DR. MURPHY notice and an opportunity to clear her name.

---

[11] A copy of the contract with CSUSA was in DR. MURPHY'S office at the time she was terminated from her employment as Principal. After DR. MURPHY'S termination, Defendants SOROKA and CITY OF AVENTURA have not permitted DR. MURPHY to enter the school to clear out her office and take possession of her personal items. As of this date, DR. MURPHY'S personal items have not been returned to her.

94.     The Defendants have conspired to deny DR. MURPHY of a Property Right Without Due Process of Law.

95.     The Plaintiff has suffered substantial damages as a result of the Defendants' acts in pursuance of the conspiracy.

WHEREFORE Plaintiffs pray this Court to enter judgment against the Defendants named in this Count for compensatory damages, actual damages, consequential damages, attorney's fees and costs, and such other relief as this Court deems just and proper.

## COUNT VIII
## CONSPIRACY TO INTENTIONALLY INTERFERE WITH CONTRACTUAL RELATIONS Against Defendants SOROKA in his Individual Capacity and Defendant MONROE and Defendant CSUSA

96.     Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 47 and 83 through 87, as though fully set forth herein.

97.     The Defendants have conspired to Intentionally Interfere with the Plaintiff's Contractual Relationship with the CITY OF AVENTURA.

98.     The Defendants intentionally and knowingly interfered with the Plaintiff's business relationship by falsely accusing DR. MURPHY of offering Jake Norman entrance into the Aventura City of Excellence School even though he was not on the top of the wait list.

99.     The Plaintiff has suffered substantial damages as a result of the Defendants' acts in pursuance of the conspiracy.

WHEREFORE Plaintiffs pray this Court to enter judgment against the Defendants named in this Count for compensatory damages, actual damages, consequential damages, and costs, and such other relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing SECOND AMENDED COMPLAINT was mailed this __ll__ day of April, 2007 to I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to MICHAEL T. BURKE, Esquire, Johnson Anselmo, Murdoch, Burke, Piper, & McDuff P.A., 2455 East Sunrise Boulevard, Suite 100, Fort Lauderdale, FL 33304 and EDWARD J. POZZULI, ESQUIRE, Tripp Scott P.A., 110 S.E. 6th Street, 15th Floor, Fort Lauderdale, FL 33301 and BARRY JAY WARSCH, Esquire, Boyd Mustelier Smith and Parker P.L., Bank of America Tower at International Place, 100 S.E. Second Street, 36th Floor, Miami, FL 33131.

## DEMAND FOR JURY TRIAL

Plaintiff, KATHERINE MURPHY, demands a jury trial on all issues so triable.

By:_____

Richard J. Burton, Esq., FBN 179337
The Burton Firm
Attorney for Plaintiff
2999 N.E. 191 Street, Suite 805
Miami, Florida 33180
Phone: (305) 705-0888 Fax: (305) 705-0008

21